■ In the Matter of STARRY KRUEGER, Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant, and RENT STABILIZATION ASSOCIATION et al., Respondents.—Judgment, Supreme Court, New York County, entered October 4, 1978, reversed, on the law, and in the exercise of discretion, the petition dismissed, and respondent-appellant's determination establishing an interim rent reinstated, without costs. Respondent-appellant New York City Conciliation and Appeals Board (CAB) appeals from a judgment at Special Term granting the petition of petitioner-respondent tenant to annul an order and opinion of respondent Rent Stabilization Association (RSA) in so far as it established a lawful rent for the subject apartment *ad interim* pending remand by CAB to RSA for further processing by it of the application of the owner of the subject housing accommodation for late enrollment in RSA, after approval by the City Housing and Development Administration (HDA), as provided by the usual procedures.[1] Possession of the subject apartment had been taken May 1, 1973, by petitioner-respondent tenant under a two-year lease. In October, 1974 the building was bought by Washington Square Realty Corp. (herein, variously, owner or landlord) which did not then apply for membership in RSA. About

1. The situation in this city as to what is covered by rent control, as opposed to rent stabilization seems, at first view, a tangled skein, but when the threads are carefully and finally combed out, as we have tried to accomplish, it appears clearly that the applicable statutes and regulations thereunder place the landlord-tenant relation found here under rent stabilization under the aegis of official and quasi-official bodies such as the Conciliation and Appeals Board and the Rent Stabilization Association.

April 1, 1975, the owner told the tenant that her lease would expire at the end of that month and offered her a renewal of one year under a new lease with three new clauses. The following January, the tenant complained to the city office of rent control of harassment, a rent overcharge, and service reduction, and in March she restated the same complaints to CAB. In that month, the owner sued in Civil Court for nonpayment of rent; the Judge presiding ordered an HDA inspection; it was determined thereby that the building contained six apartments, and since the owner was not a member of RSA, the complaint was dismissed. In June, 1976 CAB forwarded the tenant's complaint to HDA, specifying the landlord's nonmembership in RSA. In November, the owning corporation finally applied for such membership, and, the following month, instituted a new nonpayment proceeding against the tenant. But Civil Court held that it could not hear the case, the owner not yet being formally a member of RSA. However, a settlement arranged by the court resulted in tenant's payment into her lawyer's escrow account of a lump sum with further rental payments at a slightly reduced rate; further, the office of rent control and RSA and CAB were all individually and severally directed to determine the legal rent. Finally, RSA approved the owner's membership application with HDA's required approval, and in March the owner asked CAB to establish a lawful rent for the tenant's apartment. A hearing was held by CAB in June, at which the tenant repeated all her earlier complaints, and also challenged the owner's membership in RSA as unlawfully belated, as well as for failure to observe requirements of section 12 of the Rent Stabilization Code for notice to tenants of late applications for RSA membership; CAB, seemingly partially sustaining the tenant's argument, remanded to RSA for further processing and a determination under section 12 of the code, at the same time honoring the membership by establishing an increased lawful rent for the apartment. On March 7, 1978, RSA approved the membership *nunc pro tunc* as of the beginning of 1977. In ruling on the tenant's CPLR article 78 petition, Special Term held that CAB should not have ruled as it did, indicating that its remand to RSA had shown the membership to be void and that therefore a controlled, rather than a stabilized rent would be in order. Reargument was sought by respondent-appellant CAB, but denied.[2] The issue is whether CAB's action was improper by reason of fatal inconsistency in considering the landlord not a member but entitled to the benefits of membership, or was its determination rational? We hold that it was entirely rational under applicable statutes and regulations, and should be supported. Subdivision *c* of section YY51-4.0 of the Administrative Code of the City of New York (Rent Stabilization Law) authorizes HDA to promulgate "rules and regulations * * * necessary for the effective implementation of this law." Section 12 of the Rent Stabilization Code treats an owner who complies with all obligations of the Rent Stabilization Law as "deemed a member" of RSA unless that status is set aside by CAB; further, by section 34 of the code, CAB has entrusted to it complete determination of appeals respecting membership. Section 12's time limitation on new members bars them unless approved by HDA, which did approve the owner's application. Nor could the city rent agency exercise control over rent of the subject

2. We note a stipulation on file to include in the record on appeal the entire file on the motion to reargue. That file was not considered in arriving at our determination. Aside from the fact that the stipulation was never given cachet by being "so ordered" by this court, we find it of no value. Certainly its denial was not appealable. As if this were not enough, the application for reargument was untimely made.

apartment (Housing & Development Administration, Rent Stabilization Regulations, § 3) without determination by CAB or RSA that the owner was *not* a member, and the determination made was to the contrary. Further, there being nothing to show bad faith on the landlord's part in the membership application, the equities involved bolster the owner's position (Rent Stabilization Code, § 35). The substance of the ratification by CAB of membership by the owner must prevail over the form of reconvening RSA to rehear what was already *fait accompli* by the very agency possessed of authority to act. Concur—Birns, J. P., Fein, Sandler, Markewich and Bloom, JJ.

